Good morning, your honors. May it please the court, I'm here on behalf of the appellants, which in this case are referred to by initials, T.M., J.M., and A.M. A core requirement of application of the Rooker-Feldman Doctrine is that the plaintiff must be complaining about an injury that arises from the state court order itself. Let's start with the basis here. Tell us what the Rooker-Feldman Doctrine is so we'll know which part of it you're talking about. Yes, your honor. Rooker-Feldman derives from 28 U.S.C. 1257A, which as the court knows reserves unto the Supreme Court exclusive jurisdiction over the final decision of a state court decision from the highest court from which a decision can be had. That's essentially the Rooker-Feldman Doctrine in a nutshell. It feels like if that was an absolute requirement, the Exxon opinion could have been a lot shorter, right? Because in Exxon there was no state court judgment. So if that was an absolute requirement, we could have just cut out virtually everything in Exxon. Which requirement? There was no final state court judgment in Exxon. So if that was an absolute requirement, the court could have said, Rooker-Feldman, it is an absolute requirement that you have a final state court judgment. In this case, there is no final state court judgment. Case is over. It could have been. It seems strange the Supreme Court wrote a heck of a lot more than that in Exxon. It did. And this court in Thena... This is the word we're musing? Yes. The other side says you were musing or the court says you were musing. The court said it was musing, right? Yes. I didn't really take it that way. I thought the court was commenting on... You thought the court was like misrepresenting itself? No. No. Just the opposite. You said that's what it was doing. Oh, I didn't know the court was musing. I didn't read that. I didn't see that in the opinion that the court said it was musing. Well, it did use the word musing. What the court said is if you read the statute literally, then it would require a decision by the Supreme Court of Maryland. Can I ask you, so your brief fails to discuss the prayer for relief at all. Do you have a copy of the complaint in front of you? I do. Great. Could we turn to page... This is going to be JA-48. It's stamped page 39. Yes. I'm there. Okay. So can we agree that with the exception of ABD, if I squint really, really hard, there's no request for damages in this complaint? I see declare, declare, preliminary and permanent injunctive relief, right? At least in A, B, and C, I see declare, declare, and injunctive relief. I think that's correct. Okay. And when I look at A, B, and C, I look at what you're asking me to declare and to enjoin, and do you agree with me that the words consent order are in every single one of those paragraphs? I do. And may I address that? Okay. I think the case that explains our position the best is the Sung Cho case out of the Second Circuit. Now, they're applying a formula that they derived in a case called Hull Block, which this court applied in Halsey versus Sissa. Like the Second Circuit. Was there a consent order in Sung Cho? Yes. No. There was a judicially approved settlement agreement in Sung Cho. That's exactly what we... Those are not the same thing, are they? Well, they are. And in fact... And you held in contempt for violating a judicially approved settlement? If the settlement terms are incorporated into an order, yes. Okay. But Sung Cho says over and over again, it was endorsed so ordered by the court. A court ordered... So let me give you an example. For a minor or an infant or an incapacitated person, it's entirely possible you'd need judicial approval of a settlement, right? Yes. But it's not contempt to violate a settlement agreement, is it? Well, take the divorce context where the settlement agreement is often incorporated into a divorce decree. You absolutely can be held in contempt under those circumstances. That's what we have here. And in fact, Your Honor, I plead that... The state judge also signed it instead. I mean, five lawyers signed it and a state judge. The state judge ratified it. That's what they did. So it's not the same as a judicial decree that indicates it's... Well, it's a judicial decree, but it's also one that incorporates the settlement agreement between the parties. And if I may get very specific with the allegations, because I want to make sure I look at paragraphs 182, 191, and 199 of the complaint. Those... 182 says that the consent order contained the negotiated settlement agreement. In other words, that was the agreement between counsel and the hospital that was put into the consent order. We also allege that we agreed to those... I have a direct response to that. Does the agreement... Do we know... This is an honest question. I don't know the answer. I'm sitting here right now. What if, counterfactually, the court had refused to answer to the consent decree? Does the party's private agreement say what happens if the court refuses to enter a consent order? Does it have any legal effect absent of the court consent order? I'll think of a plea bargain, right? So the government and the defense can agree to any old thing they want, but until the court accepts their guilty plea... No. I would say that the agreement between the parties would have been enforceable as a contract. If the court had said, I'm not going to enter this as a consent order... And that's the whole point that I'm trying to make, is that the harm arises from the settlement agreement between the parties, not what the court did. And that's what the Sung Cho case teaches us. And specifically, in paragraph 189, we allege that it was the actions of the hospital in demanding these settlement terms that harmed us, not what the court did. The court just put a stamp on it. So let me posit that, I think, to the extent the actions of the hospital in the negotiations harmed your client in a legally cognizable way that she could get damages, but this complaint does not seek damages. So let me ask you then, could you identify what is the harm, the legally cognizable harm, that you are seeking to have remedied by a declaratory judgment or injunction? Right. Two parts. First, I want to point out that in the Sung Cho case, I know the other side makes it a big point about... I'm not asking about Sung Cho, I'm asking about your case. I understand. But the reason I'm bringing up Sung Cho is that in that case, they asked for the exact same remedies that we do. A permanent injunction and a declaratory, a declaration that the agreement is invalid. They asked for one other thing, didn't they? Well, they asked for... Having read Sung Cho this morning... Diminimous damages. They asked for nominal damages. Right. Now, we filed a separate lawsuit in which we asked for damages, which could have been consolidated with this one. And would you agree with me that Sung Cho at no point differentiates remedy by remedy? It never asks... It just says the lawsuit could go forward. It doesn't go remedy by remedy. You're right. Okay. So I want to bring you back to my question. Yes. What harm do you believe would be remedied by the grant of injunctive or declaratory relief in this case? It would nullify the settlement agreement between the parties, which we believe... Which would do what? I mean... Well, right now, my client has to give up her primary healthcare doctor of her choice. She has to use certain providers dictated by the state for the rest of her life. And when we say has to, we mean what would happen if she didn't? She would be in breach of contract. She would also be potentially held in contempt of court. Okay. But I guess I'll say... Here's the way I think about it. Even if we were to hypothetically nullify any contractual obligation that existed, we'd have to also act on the consent decree or she'd still be in contempt of court, right? Yes. The Supreme Court's explained that a consent decree is a judicial order. Right. Right. And in this case, they're one and the same. So you are, in fact, trying to backdoor attack the consent decree because if the consent decree remains in effect, she can't do any of the things that she wants to do unless you get rid of the consent decree. A court wouldn't have the authority to enter a consent decree absent the underlying agreement of the parties. What we're saying is that the underlying agreement of the parties is where the harm came from. Not the fact that the court simply put its stamp on it. Again, damages, I think, are separate. I totally understand why you have a separate lawsuit for damages. But when it comes to the harms that are in many ways caused by the consent decree, why isn't the answer... These sound like great arguments to make in Maryland State Court. Well, they could be great arguments in Maryland State Court, but... The only reason the Maryland State Courts haven't decided them is because your client got a stay of the state court appeal. Well, that brings me to the next thing, is that this court has made clear that Rooker-Feldman doesn't apply... It applies only to final decisions. But you're the one that made it not final. Well, we don't have the authority to make it not final. We requested a stay to give the federal court... The federal court was farther along than if we had... We filed the appeal only to protect our interests, which is perfectly fine. But the federal court... It's just a little bit weird to say, you can't do it here because we don't have a final state judgment. Don't pay very much attention, though, to why we don't have a final state judgment. No, no, no. I'm not saying that. We're perfectly with the court... I don't have the authority to tell the Maryland Appellate Courts what to stay. But the important point here is every circuit, and I mean every circuit that's addressed the issue of whether you can apply Rooker-Feldman when there's a state appeal pending, stayed or not, because the judge here said it doesn't matter whether it stayed. The fact that there's an appeal doesn't matter. What about the Sixth? You said every court has... Right. The First...  No, no, no. I'm saying every court that's addressed it. I don't think the Sixth Circuit has... Really? I thought they had a whole opinion about this. I'm not aware of it. I'm aware of the First, Third, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh. And they've all said when you have an appeal pending, it's not over. And if you look at the orders that the state court imposed, it didn't say indefinite. This is not a permanent stay. Those orders are in the appendix to the opening brief. All of them are. They all have the same language. It's only stayed pending further order of the appellate court, and it's tied to either a decision by the federal court or 120 days. So by definition, the court is saying, we're only staying this for a period of 120 days. We'll reassess it at that time. And at any time, the appellate court remains free to reinstate the appeal. So we don't have a final decision from the state, no matter how you dice it. Okay, so for benefit of your rebuttal time, the case I'm talking about, the Sixth Circuit decision, is RLR investments for F4380, which I think says not what you want us to say. I mean, there are cases, even the First Circuit, which is the one they rely on, have said you can have finality under certain circumstances. So if the Sixth Circuit says that you can have finality during a state court appeal, that would be contrary to the 3rd, 5th, 7th, 8th, 9th, 10th, and 11th circuits. And I cite all of those cases on page six of my reply brief, so to give you all the citations. So they would definitely, I'm not familiar with the case, but if in fact that's what it says, that it would definitely be in the minority here. Every case that I'm aware of that says you have to have a final decision, that is considered a pending state appeal, has come down saying that you cannot apply Rooker-Feldman without a final order. I would urge you very much to respond to the argument on your rebuttal time, because the Sixth Circuit expressly says there's no finality requirement. That there's no, well then, there's no finality requirement. Well then, then there, then there, no, I understand, I understand. I can, I can say why it's wrong. This court, well, it's, it's wrong because the Supreme Court says you, the statute itself says you have to have a final order from the highest court of the state in which a decision can be had. So you got the plain language of the statute. This court in Jonathan versus Justice just a couple of years ago said you have to have a final judgment. There was no state pending appeal in that case, so we don't know whether that would change the analysis. But what I am saying to you is, just because I'm going to assume that the Sixth Circuit says you can have a pending state appeal and have enough finality for purposes of Rooker-Feldman. If that's the Sixth Circuit's position, it is contrary to every other circuit court that I've listed on page six of my brief. And I would suggest that it's contrary to the instructions from the Supreme Court. Keep in mind that the United States Supreme Court has instructed lower federal courts to cabin Rooker-Feldman to the procedural cases that mirror Rooker and Feldman themselves. Is that what it says, or it says cases of the kind that were Rooker and Feldman? I believe that's the language. Well, the language, this court has interpreted it as cases that mirror procedurally those cases that gave rise to the Rooker-Feldman doctrine, the Rooker case and the Feldman case. Why did you ask for a stay of the matter in the state court? The appeal, we noted, was a protective one. I didn't know how the federal court would rule, but the federal court was way far along. And I filed the- But you got a matter in state court, clearly a state matter, and that matter's been applied in state court. It's on appeal to the state courts. You then seek, as you've done here, you seek to get remedy in the federal court here, but you got a state matter going on. So you were saying that the way to avoid finality is you as the plaintiff would file a state. There is no, your honor, respectfully, the Supreme Court has made it very clear that there's no problem with having parallel state and federal proceedings on the same issue going at the same time. When one or the other makes a decision, it would be perhaps preclusive of the other. Does the state frustrate finality? No, it doesn't mean that the state appeal is over. It just means that it's temporarily stayed. What happens if you didn't file a stay? What would be the outcome? Well, I mean the court, I mean- You probably have something coming from the court there by now. Well, I don't know about that, perhaps. But at the time that we requested the stay, the motion had been pending before the district court for well over five months, fully briefed. What happens if we decide to stay this pending appeal? Think about it in the state court. Well, then I would go back to the state court and say, then we have to go forward. Somebody's got to decide it. Isn't that what you ought to do? I don't think so, your honor. But I mean, the point- The principles of the Rooker-Feldman document, and the whole purpose of it is, we can't be second guessing decisions of the state court. That's the United States Supreme Court can do it. But only in exceptional circumstances do we do it. In Havis and maybe in the Florida case that dealt with Terry Schiavo and cases like that, we've been in that situation, but we don't do that here. I mean, practically speaking, think about it. Could we just, on our own, just say, no, we're going to stay doing anything pending that. Would we ever see this case again? If the court entered a stay? Yeah, and say, pending what goes on there, which essentially lifts up this. I would think that the essence would be, we could write it in, it lifts the stay that you have there. State court go ahead and decide to stay. What if we just certify this whole thing to the highest court? This issue of whether it's a consent thing is done with. You could do that. It belongs in state court. It belongs in state court, not here. Your Honor- You want to be here because you didn't get the remedy in state court. I never asked the court for a remedy. I never asked the state court for a remedy. That's exactly what, Judge, I brought it out on your complaint. Right, but- I'm not sure what remedy you are seeking here. I'm seeking to have- Other than the point out to the consent decree, which makes that the injury. Is that the injury? The consent order, is that the injury? The injury is requiring my client to give up constitutional rights to gain her freedom from the hospital. That's something the hospital did. The court didn't do that. Okay? The- But it arises from a consent order, that requirement. So the injury is a consent order, and you seek to get rid of the consent order to say you're entitled to delivery of the interest under the 14th Amendment. Your Honor, I seek to get rid of the underlying agreement, which is embodied, in this case, in a consent decree. If there were no consent decree, and we just had a settlement agreement in which she was required to give up those rights, I would be complaining that state actors required her to give up her constitutional rights in order to get her freedom. It would be the same. Okay, let's hear from Mr. Sawdeck, and you will have some additional time to speak. Thank you, Your Honor. Thank you. Good morning, Your Honor, Your Honors. I'm Mark Sawdeck. I represent appellants in this action, University of Maryland Medical System Corporation, Baltimore-Washington Medical Center, Inc., Kathleen McCollum, and Thomas J. Cummings, Jr., M.D. This case presents a straightforward application of the Rooker-Feldman Doctrine, as set forth in Rooker, Feldman, and as clarified by the Exxon case in 2005. Under Rooker v. Feldman, and this case is procedurally similar to the Rooker v. Feldman case in that the plaintiff is not bringing, appellant here, is not bringing a parallel action, is not bringing an action to challenge the same conduct in federal court as in state court. In this action, plaintiff has brought a claim to challenge directly the state court order, the consent order that Your Honors have heard about. Can you help me with this one? So we said in Del Webb v. Carlson that you're not a state court loser for purposes of Exxon and Rooker-Feldman if you got what you asked for, right? In that case, they were seeking arbitration. They got arbitration, so they weren't a state court loser. And so we said they didn't get the benefit of Rooker-Feldman. You sort of got, I mean, in this case, we've got the same sort of problem, right? That TM sought a consent decree and got the consent decree. And so why do we think that she's a state court loser? She got what she asked for, a consent order. She got what she asked for in the form of the consent order. She now asserts that she is the state court loser. TM challenges the order itself. I understand that, but the rule is that we've got to have, maybe the rule is, you've got to be a state court loser. What I'm trying to understand is whether we can call her a state court loser since she asked for the consent order that she got. Yes, Your Honor. In this instance, after the entry of the consent order, TM does believe that she is the loser in state court. That is why she has challenged the order in federal court. We don't typically think about somebody prevailing or losing based on their subjective after the fact perception, right? I mean, I take it in Del Webb, right? The reason that the person who had sought arbitration was in federal court is because they regretted their decision to ask for arbitration. That's why they were there, right? They thought subjectively on the back end that they lost, right? But that's not really how we do it. And I take Carlson to be saying that if you get what you've asked for, then you are not a state court loser. And what I'm asking is, why is that not the case here when she asked for a consent order and that seems to be what she got? Yes, Your Honor. In this instance, TM alleges that she did not voluntarily seek the consent order, that she was under duress, she was coerced, and therefore, the consent that she provided for the consent order was not in fact valid. I believe that is the answer that TM would provide as to why. In other words, she's saying she didn't ask for this. It was under duress and that's her defense to at least in the state court. And so Judge Richardson brings up a good point. I mean, if it's a consent thing, you come up here, it really brings the question, do non-adversarial state proceedings implicate the Rockefeller Act? And your nuance seems to be, well, this isn't exactly non-adversarial, the consent agreement itself. If you took the fact that she voluntarily did it, then yes, but she says she didn't. She says it's a duress thing and I didn't get what I wanted for it. You gave me something I didn't ask for, which presents, I think, a rather novel question for us to consider. That's probably the reason we're here listening to your case right now. And that's the point that Judge Richardson's making here. So address that further if you want. Well, certainly the underlying state court action was adversarial. In that action, there was not agreement, of course, and the action would have moved forward had the parties not reached a- His face looks to be non-adversarial. I mean, that's what a consent agreement is. But when you bring an action or at least take an appeal from that, your contention is, I didn't agree to it and therefore this is something somebody did and it wasn't me. That's what duress is. It means either I did it under pressure or some kind of coercion or whatever, and it's not me. It's an interesting nuance and maybe Judge Richardson is over something here. I'm trying to walk through it. In any event, this was an order issued by the court, and that is the order that is being challenged. And by challenging it, the Johnson v. Orr case in the Seventh Circuit looked at a consent order as well, an agreement between the parties, and held that even where the parties have agreed to the relief that would be provided, if that relief is later challenged, that renders the person who challenged it the state court loser. And so even though we have the agreement- So your view is that we look at who's a state court loser based on their sort of subjective view at the time the federal suit is at issue? I mean, that doesn't seem like what we did in Carlson, right? That seems like that would lead to a different result in Carlson, right? Because they wanted the arbitration then, right? They decided they didn't want it anymore, but they still got what they had asked for. Yes, Your Honor. We would do that, at least in the limited circumstance where the party contesting the order asserts that they did so under duress, and therefore any consent that they provided at the time was not valid consent. And therefore the consent at the time the order was entered did not in fact indicate their assent to the relief that was provided. Was the person in Carlson seeking to modify or enjoin the actual state court judgments in any way? Your Honor, I'm not aware of the answer to that question. I think the motion, the state court order in Carlson compelled arbitration. And what the person was asking to do, as I recall, was to address a whole bunch of questions the state court had never addressed. Yes, Your Honor. In that instance, that then is different from this case in which the state court is directly addressing the underlying complaint that was filed in that action and resolving that complaint in its entirety. Can I take you to what I think is probably the best case for the other side? And what is your response to Sung Cho? Because I keep reading it, and it definitely has some very obvious similarities to the situation. So you would say, well, either is your position we cannot rule for you without saying Sung Cho is wrong, or do you think we can distinguish Sung Cho on some basis? We can distinguish Sung Cho on two bases. First, as Your Honor pointed out in the topside argument, there is a difference between the settlement agreement and a consent order. This case involves a consent order, which is an order of the court, not an adoption or otherwise taking a settlement agreement privately entered in between the parties and recognizing it. Does that work? I want you to come to the second one. But does that work where it says so ordered? I'm not sure. In Sung Cho, doesn't the judge write so ordered on it? Doesn't that feel like it's now like a consent order? It certainly becomes an order of the court. Yes. And this brings us then to the other basis for distinguishing Sung Cho. Sung Cho involved a series of actions by the defendant in which the defendant, the city, required parties to enter into a series of agreements and then months later, far removed temporarily, had the court enter those agreements as orders and then took action to evict tenants from their premises based on the subsequent orders. And in Sung Cho, the plaintiff attacked the underlying settlement agreements. In this case, the attack is on the order itself, not the settlement agreements or not any agreement between the parties, but the order itself. Sung Cho involved an attack on the underlying conduct which occurred temporarily, far remote, months earlier at least in the case of Sung Cho, the named plaintiff. It occurred months earlier and was temporarily and substantively distinct from the act of entering that by the court. In this case, there is a single act that is being attacked by the plaintiff and that is the entry of the consent order itself. It is not the underlying agreement. There is no underlying agreement. What we have is a consent order presented to the court and then entered immediately. As a formal matter, how do I know there isn't an underlying agreement? One thing that's a bit challenging and a bit frustrating about this case is that the underlying agreement does not appear to be in the record. Is that true? There is no underlying agreement in the record. That is correct. Or is the consent decree in the record? There is no consent decree. The only document is the consent order. Which was that document in the record? The consent order. Yes, that's in the record. But there's nothing before that that's in the record? Correct. There is no other document. There is no other document in the record. That is correct, Your Honor. And are you—this is always a dangerous game, but I'm going to ask it anyway—are you representing that there is no other agreement other than what's in the record? Your Honor, I am not at liberty to address that question at this point. I think it would be unwise for me to do that. I was not involved at that phase of the proceedings. That's a fair answer to a slightly unfair question, but I wanted to ask it. I am aware that the record contains no independent agreement of the parties. Only the consent order, which the circuit court for Anne Arundel County then entered as an order of— Well, I guess, does the complaint allege the existence of an independent agreement between the parties? I'm not aware that it does, Your Honor. It does not allege a complaint separate from the—an agreement separate from the consent order. Can I ask you about—my understanding—this would be all publicly available documents. My understanding is there is a separate lawsuit seeking damages? Yes, Your Honor, that is correct. That lawsuit was filed by TM against the same four defendants in this action, currently appellees. That was filed in the district court for the District of Maryland. What is the status of that case? The Honorable Judge Rubin dismissed that action on a Rule 12 motion, failure to state a claim. So not Rooker-Feldman? Correct. That case, then, has now been appealed and briefing is underway in the Fourth Circuit, this court, on that action. And, Your Honor, that is a critical point here because plaintiff herself has bifurcated her actions. And so that establishes, again, that this is not, in fact, a challenge to the underlying conduct. The underlying conduct is challenged in both the state court action, in which the consent order was issued, and in Judge Rubin's—the case before Judge Rubin. I have a question, but finish your answer. And causes of action are pled under three federal discriminations—three statutes alleging discrimination under three federal statutes, as well as battery and false imprisonment, and damages are sought in that action. So let me give you a hypo that sort of builds off this. So imagine a world in which the following things all happened, and we can all agree and we can all prove that all these things happened, right? So at some point, someone takes another person into a room, threatens them, beats them up, like commits a tort against them, like an actual actionable tort in law, right? An assault, a violent assault. And then two days later, those same two people go into court and agree to a consent decree. And the allegation later is, the only reason I ever agreed to that consent decree is because someone beat the heck out of me two days ago, right? You agree that person would still, notwithstanding the—actually, not even the consent decree. Like, they go into court and the court finds something during a contested proceeding, in part because the victim doesn't testify and the victim later claims, the reason I didn't testify is because someone beat me up, right? You agree that person definitely still has an action for damages later. Like, if the argument is you committed an assault against me in the room before we ever went into court, that person has an action for damages, and Rooker-Feldman has nothing to say about that. Yes, Your Honor. That person would have an action, certainly in state court under any number of torts and perhaps statutes, and possibly in federal court if the federal court has subject matter jurisdictions— Even though, even though, the beating could also be relevant to the proper outcome of the later proceedings because the beating could suggest that the court found the facts wrong in the other proceeding. That is correct. That does not implicate Rooker-Feldman. This case is similar to the Rooker case because in this case the plaintiff did not bring parallel actions. So the state court action in which the consent order was issued involved allegations, claims asserting wrongdoing that occurred prior to the consent order and underlying that action. In that case, that case brought in the state circuit court may be appealed to the intermediate appellate court, the state supreme court, and then the United States Supreme Court if it accepts certiorari. What may not happen, and Rooker establishes this, is that where you have a non-parallel federal action, you may not challenge that order directly in district court. That is clear under Rooker, and it is not changed in any way by the rulings in Exxon, which narrowed Rooker-Feldman, Rooker and Feldman, under other circumstances, where in fact the plaintiff has asserted parallel causes of action. Your Honor, I am pleased to address both the other allegations with respect to the dismissal of TM or JM and AM. Should this court have any questions, otherwise we will rest. Let me ask my colleagues to go further. Thank you very much. Thank you, Your Honor. Mr. Shepard, you have a few minutes. Can you start with my good friend Judge Heiden's question? When I read the complaint in paragraph 182, it suggests that there is no separate agreement apart from the consent order. Is that right? Let me explain what happened. Great. If you read through the record, you'll find that TM was at risk of having, against her will, forcibly inject with antipsychotic medication. And she was being held. She was complaining about both. Her lawyers were negotiating with the hospital to try to get her out. That was her goal, to get released from the hospital to avoid those injections. There was an oral agreement reached between the attorneys for the hospital and her attorneys. And that agreement was memorialized in the consent order. There was no time to put it in. They could have, I guess. The agreement, but as I understand, I understand that and I understand what we've got here. But the agreement was to enter into a consent order. That was what the agreement was. Well, there was a pending case, Judge, and the parties wanted to get rid of not only that case, but all the other litigation that was pending between the parties. And so part of the agreement was that we'll let you out, but you have to dismiss all these other cases. And that's why that's part. And enter this consent order. Right. And we're going to get the court to dismiss this case by presenting our agreement to the court and having the court sign off on it. So then go back to Sung Cho for a minute, right? Yes. So the argument that your colleague is suggesting is that in that case, unlike this case, there were independent agreements that were only later memorialized, where what you have is an agreement that is, I hate to use the word because it gets misused here, but inextricably intertwined with the consent order. That is a distinction between these two cases. Can you tell me why you think that distinction is either false or doesn't matter? I don't think that it's a distinction that matters, Your Honor. Why not? Because you're talking about timing. So the circumstance— It's not just timing, right? It's the existence of an independent agreement, independent from the consent order. Right. Or whether you just have a single consent order that by its nature involves an agreement. That's what consent means. Let's assume that the lawyers reached the agreement over the phone, which is what happened. TM, if you dismiss all these cases and you agree to these terms, we will release you from the hospital. That's what you want. That was the whole purpose of the underlying habeas case. Let's say that they decided to just go in and say to the judge, Your Honor, we've reached an agreement. We're going to dismiss the case. And they presented a different document to the court that had the same terms as the consent order. And the court said, so ordered, just like the judge signed this consent order. I don't see a material distinction between what happened in Sunchow other than the timing of the underlying agreement. But we still have the underlying agreement here. Instead of just writing so ordered on the underlying agreement, it happened to be memorialized in the format of a consent order, which the judge simply signed. That's the only difference. And I don't think that's a material difference, Your Honor. I don't think that the other side has distinguished Sunchow. That's certainly not a material to the legal analysis. Because what we're complaining about here is not that the court order harmed us. We're saying that if you look at paragraph 199, we expressly allege this. It was the actions of the hospital in demanding those terms of the settlement agreement that caused the harm to my client. Not the court simply signing off or, in the words of Sunchow, saying, so ordered. Okay? Where could you appeal from? You appeal from what? The agreement or you appeal from the court order? Well, unfortunately, I wish I had a separate agreement. You can't appeal from the agreement. You have to appeal from the court order. Well, you could. You have to have a matter of semantics where the agreement and then you get an order, and then the question comes up is what is the underlying rationale for the injury that arises from a court order? And from the court order, that's what you appealed. Well, that's the only thing I had in this case. But if I had ‑‑ let's assume I had the underlying agreement. So your problem is with the court order. No. I go back to what the Supreme Court said with regard to consent orders. They're two elements. It's not like a ‑‑ there wasn't a judgment, like a trial. There was an agreement between the parties, and that agreement was simply memorialized in that format. Let's assume that the consent order was never ‑‑ Would that mean that you could never do Rooker-Feldman in a consent order case? Because there's always in your mind ‑‑ No, no. The consent order, by definition, includes an agreement. And so you could always challenge the agreement. No. That's not what I'm saying. If you look at the Johnson v. Orr case, which the lower court relied on what they just argued, there you had a tax sale. The plaintiff got the right to buy a deed at a tax sale. Later the court said that was a mistake. The clerk said that was a mistake. There were no taxes due. With the consent of the plaintiff, the court entered an order nullifying the tax sale. So, therefore, the plaintiff no longer had a right to get a tax deed. Several years go by. Then he sues, never mentions the agreement, and says, I'm suing because the court didn't give me a tax deed. That consent order caused the court not to give him the deed. In other words, the harm arose directly. That's not a consent order. Sure it was. He consented to an order. Right. But in the language of Johnson v. Orr, they're talking about a consent order. Like the plaintiff entered a consent order to dismiss the initial claim. I understand the argument. Right. Thank you very much for your arguments today, gentlemen. We'll come down and brief counsel and adjourn for today. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: James Andrew Wynn, Julius N. Richardson, Toby J. Heytens